**HAHN, et al., Appellants,**

v.

**WONG, Appellee.**

No. 89–1364.

United States Court of Appeals,
Federal Circuit.

Dec. 28, 1989.

---

Philip D. Sheperd of Dow Chemical Co., Midland, Mich., argued for appellants. With him on the brief was Bernd W. Sandt.

M.P. Haddican of Shell Oil Co., Houston, Tex., argued for appellee. With her on the brief was Douglas Baldwin.

Before BALDWIN and FRIEDMAN,[*] Senior Circuit Judges, and MAYER, Circuit Judge.

FRIEDMAN, Senior Circuit Judge.

This is an appeal from the decision of the United States Patent and Trademark Office Board of Patent Appeals and Interferences (Board) that entered summary judgment in an interference because in his initial filing, the party who initiated the interference had not made a *prima facie* showing of reduction to practice. The Board also refused to consider the additional evidence the party subsequently submitted to bolster his claim because he had not shown good cause why he had not submitted the additional evidence with his original application. We affirm both rulings of the Board.

I

A. A brief description of the procedures and practices of the Patent and Trademark Office in conducting interference proceed-

---

[*] Judge Friedman took senior status on November 1, 1989.

ings under its new rules, 37 C.F.R. §§ 1.601–1.690 (1988), adopted in 1984, is necessary to understand the issues here.

Both the patent statute and the regulations of the Patent and Trademark Office authorize an interference between an application for a patent and an issued patent. 35 U.S.C. § 135(a) (Supp. V 1987) and 37 C.F.R. § 1.606 (1988). If the effective filing date of the application is more than three months after the effective filing date of the patent, as in this case, the applicant is required to file evidence demonstrating that the "applicant is *prima facie* entitled to a judgment relative to the patentee," and "an explanation stating with particularity" why he "is *prima facie* entitled to the judgment." 37 C.F.R. § 1.608(b)(1988).

When an application for an interference is filed, a primary examiner makes a preliminary determination "whether a basis upon which the applicant would be entitled to a judgment relative to the patentee is alleged and, if a basis is alleged, an interference may be declared." 37 C.F.R. § 1.608(b). *Cf. Manual of Patent Examining Procedure* [hereinafter M.P.E.P.], § 2308.02, last paragraph (5th ed., 8th rev. May 1988) (primary examiner is "merely [to] determine that at least one date prior to the effective filing date of the patent is alleged."). As the Commissioner of Patents and Trademarks explained in his brief amicus curiae in this case, the "one and only one, purpose" of the primary examiner's examination of the application is "to determine whether the applicant *alleges* a date of invention prior to the effective date of the patent" (emphasis in original). *See also* M.P.E.P. § 2308.02, last paragraph.

If the primary examiner makes a preliminary determination that the application meets that requirement, the application is referred to an examiner-in-chief to determine whether an interference should go forward. *See* 37 C.F.R. §§ 1.609 & 1.610(a) (1988). If the examiner-in-chief determines that a *prima facie* case for priority has been established, the interference proceeds. 37 C.F.R. § 1.617(a) (1988). If however, the examiner-in-chief concludes that a *prima facie* case has not been

shown, as he concluded here, the examiner-in-chief declares an interference but "enter[s] an order stating the reasons for the opinion and directing the applicant, within a time set in the order, to show cause why summary judgment should not be entered against the applicant." *Id.* If such an order to show cause issues, the applicant "may file a response to the order and state any reasons why summary judgment should not be entered." 37 C.F.R. § 1.617(b). The rule states, however,

Additional evidence shall not be presented by the applicant or considered by the Board unless the applicant shows good cause why any additional evidence was not initially presented with the evidence filed under § 1.608(b).

*Id.*

A panel of the Board then determines whether (1) summary judgment should be entered against the applicant or (2) the interference should proceed. 37 C.F.R. § 1.617(g).

B. The interference count in this case covers a specific organic chemical compound, which is a solid crosslinkable homopolymer of an olefinic benzocyclobutene monomer. The compound was claimed in U.S. Patent No. 4,667,004 issued to the appellee Wong, the application for which was filed on December 23, 1985. The appellants Hahn, et al. (Hahn), filed their patent application covering the same compound on June 9, 1986. After the Hahn application was rejected on the basis of the '004 Wong patent and other patents issued to Wong, Hahn instituted this interference.

In order to show a *prima facie* case of priority of invention, Hahn submitted three affidavits. Co-inventor Stephen F. Hahn stated in his affidavit that prior to December 23, 1985, he prepared and crosslinked certain homopolymers which the count covers and recorded the results on enumerated pages in his laboratory notebooks, which were attached to the affidavit as five exhibits. Attached to those laboratory notebook pages were reduced photocopies of plots or graphs resulting from the analyses of the compounds he prepared, done by five dif-

ferent analytical techniques, including infrared spectroscopy. In the appendix filed with this court, some of the reduced photocopies of graphs have been dated by a machine, while others have been dated by hand, and still others remain undated. Stephen Hahn's affidavit did not explain the significance of these plots.

Hahn also submitted two "corroborating" affidavits by two of Stephen Hahn's colleagues at the Dow Chemical Company, where Stephen Hahn worked. David W. Hughes stated that he had "read" and "understood" those laboratory notebook pages, which he described as true photocopies of the original documents he had read, "except that the dates which appeared on the bottom of the original page have been removed," and that he had signed two of the pages. Attached to Mr. Hughes' affidavit were four of the five exhibits attached to Stephen Hahn's affidavit and photocopies of the two pages of the laboratory notebooks he had signed and dated, from which the dates had been removed on the copies supplied to Wong.

William J. Harris made similar statements with respect to one of the five exhibits.

Neither of these affidavits stated that the experiments described by Stephen Hahn were actually performed at all or on any particular date, explained the meaning of the analyses graphs, or stated that they were what they purported to be.

The examiner-in-chief held that this showing was "insufficient to establish the necessary *prima facie* case for priority" of invention due to lack of adequate corroboration. He stated:

The corroboration is not adequate as the corroborators merely establish the existence of the particular pages of the notebook. However, the mere existence of the notebook is not enough. Lacking, is "evidence of surrounding facts and circumstances independent of information received from the inventor." The corroborators do not explain the circumstances by which they could ascertain that the work described in the notebook

was actually performed by the inventor prior to Wong's effective filing date.

(Citation omitted.) *See also Hahn v. Wong*, Interference No. 101,987, slip op. at 5 (BPAI Jan. 17, 1989). Pursuant to 37 C.F.R. § 1.617(a), the examiner-in-chief declared an interference and issued to Hahn an order to show cause why summary judgment should not be entered against them.

In their response, Hahn contended that their original submission made a *prima facie* case of priority of invention. They also submitted additional evidence of priority. To show "good cause" for their failure to submit this additional evidence with their initial filing, Hahn stated:

The additional evidence accompanying this response was not initially presented with the evidence filed under 37 CFR § 1.608(b) because counsel for the Party Hahn did not fully appreciate the kind of corroboration required to demonstrate a *prima facie* case for a complete reduction to practice before the filing date of the Party Wong. Most notably, counsel did not fully appreciate the requirement for corroboration independent of information from the inventor.

Additionally, although counsel exercised full care and effort, counsel for the Party Hahn did not fully appreciate the significance of the reduced photocopies of plots generated from the polymer analyses shown in Exhibit A, particularly the IR spectrum, as they bear on the issue of the kind of corroboration required in this proceeding to establish a *prima facie* case.

"Because of the significance of the issues raised," an expanded panel of seven Board members decided the case. *Hahn v. Wong*, slip op. at 1. The Board, with two members dissenting, held: "(1) that the original showing is inadequate to allow Hahn to proceed because of lack of adequate corroboration; (2) that the additional evidence presented with the reply is not to be considered by us because Hahn has not shown the necessary 'good cause why any additional evidence was not initially presented with the evidence filed under

§ 1.608(b)' required by 37 CFR 1.617(b)...." *Id.* at 4.

With respect to the inadequacies of Hahn's original showing, the Board agreed with the examiner-in-chief's statement quoted above. *Id.* at 5. The Board pointed out that "the original affidavits of Hughes and Harris do not establish that the corroborators' 'activity'—i.e., reading and understanding the notebook pages—occurred prior to Wong's effective filing date, December 23, 1985." *Id.* at 6. The Board also "fail[ed] to see where it is reasonable to conclude from the original affidavits that *any* independent knowledge can be imputed to the alleged corroborators. Indeed, as we have noted, Hahn does not so allege in his response." *Id.* at 8 (emphasis in original).

In holding that Hahn had not shown good cause for their failure to submit the additional evidence in their original filing, the Board quoted the statement in its commentary in the new rules that

> Under the "good cause" standard, ignorance by a party or counsel of the provisions of the rules or the substantive requirements of the law would not constitute good cause.

PTO, *Patent Interference Proceeding, Final Rule*, 49 Fed.Reg. 48,416, 48,423 (Dec. 12, 1984), *reprinted in* 1050 Off. Gaz. Pat. Office 385, 392 (Jan. 29, 1985). *See also Hahn v. Wong*, slip op. at 9.

The Board ruled that "the excuse offered by Hahn falls squarely within this proscription. Certainly, a party who 'did not fully appreciate the kind of corroboration required' and 'did not fully appreciate the significance of the ... plots' displays the proscribed 'ignorance of the ... substantive requirements of the law' for corroboration." Slip op. at 9.

The Board therefore concluded that "we will give no consideration to the additional evidence." *Id.* at 10.

The Board entered the following judgment:

> Whereas Hahn et al. have failed to establish their right to proceed in this interference, in accordance with 37 CFR 1.608(b) and 617, judgment as to the subject matter of the count in issue is hereby awarded to Pui K. Wong, the senior party patentee. Accordingly, Stephen F. Hahn and Robert A. Kirchhoff are not entitled to a patent containing [the] claims ... corresponding to the count.

*Id.* at 11.

## II

We agree with the Board that Hahn's original showing was inadequate to establish a *prima facie* case of priority of invention under 37 C.F.R. § 1.608(b).

■ In order to establish priority in an interference, the party who files later is "required to establish reduction to practice *before* [the] filing date [of the party who filed first], or conception before that date coupled with reasonable diligence from just before that date to [the] filing date [of the party who files later]." *Oka v. Youssefyeh*, 849 F.2d 581, 584, 7 USPQ2d 1169, 1172 (Fed.Cir.1988) (emphasis in original). To establish a *prima facie* case entitling them to proceed with the interference, however, Hahn was required only to "*prove* (by way of affidavit(s) setting forth facts) at least so much of his case as would entitle him to an award of priority *if* the senior party were to rely only on his filing date and were not to rebut any of the junior party's case." *Kistler v. Weber*, 412 F.2d 280, 285, 56 CCPA 1413, 162 USPQ 214, 218 (1969) (emphasis in original). *See also Kahl v. Scoville*, 609 F.2d 991, 995–96, 203 USPQ 652, 655 (CCPA 1979).

■ To establish reduction to practice of a chemical composition, it is sufficient to prove "that the inventor actually prepared the composition and knew it would work." *Mikus v. Wachtel [II]*, 542 F.2d 1157, 1159, 191 USPQ 571, 573 (CCPA 1976). *See also Mikus v. Wachtel [I]*, 504 F.2d 1150, 1151–52, 183 USPQ 752, 753 (CCPA 1974).

The inventor, however, must provide independent corroborating evidence in addition to his own statements and documents. *See Lacotte v. Thomas*, 758 F.2d 611, 613, 225 USPQ 633, 634 (Fed.Cir.1985). Such evidence "may consist of testimony of a witness, other than an inventor, to the ac-

tual reduction to practice or it may consist of evidence of surrounding facts and circumstances independent of information received from the inventor." *Reese v. Hurst v. Wiewiorowski*, 661 F.2d 1222, 1225, 211 USPQ 936, 940 (CCPA 1981). *See also Lacotte v. Thomas*, 758 F.2d at 613, 225 USPQ at 634 (citing *Reese);* 37 C.F.R. § 1.608(b). "The purpose of the rule requiring corroboration is to prevent fraud." *Berry v. Webb*, 412 F.2d 261, 267, 56 CCPA 1272, 162 USPQ 170, 174 (1969).

■ We sustain the Board's determination that the two "corroborating" affidavits that Hahn filed were insufficient to corroborate Stephen Hahn's claim that the invention was reduced to practice before the filing date of Wong's patent. Those affiants' statements that by a certain date they had "read and understood" specified pages of Stephen Hahn's laboratory notebooks did not corroborate a reduction to practice. They established only that those pages existed on a certain date; they did not independently corroborate the statements made on those pages.

Hahn argues, however, that under *Berges v. Gottstein*, 618 F.2d 771, 205 USPQ 691 (CCPA 1980), and in view of the two corroborating affidavits, the inventor's "notebooks, coupled with the[se] plots ..., sufficiently evidence and corroborate Hahn's reduction to practice ... to *prima facie* entitle Hahn to priority." We disagree.

*Berges* also involved an interference relating to a claimed compound in which the question was "whether the inventor Berges' own allegations of a prior actual reduction to practice of the invention of the count before Gottstein's filing date are corroborated by the independent circumstantial evidence outlined." 618 F.2d at 774, 205 USPQ at 694. The corroborating evidence included the inventor's laboratory notebooks and spectrographic analyses of the compound. In a discussion of the relevance of such evidence, the court considered whether the analyses were performed, the plots were genuine, the plots existed prior to the critical date, and whether the plots represented the compound in question. 618 F.2d at 775, 205 USPQ at

694–95. It noted that the Board had not questioned whether the compound's structure had been represented by the plot, so that an affidavit interpreting such a plot was unnecessary. *Id.*

The inventor's spectrum analyses and notebooks were not, however, the sole basis for the court's holding that Berges had sustained his burden of proving prior reduction to practice. Such data were merely one component of an array of evidence relevant to the issue of corroboration. For example, Berges submitted affidavits showing that he was a member of a highly organized research team involved in developing T–ceph–A, the compound in question. 618 F.2d at 775, 205 USPQ at 695. Affidavits also explained the routine procedure for identifying, preserving and testing new compounds and traced the development and independent testing of T–ceph–A. *Id.* The court concluded:

> With all of the documentation briefly reviewed above, which consistently fits the affidavit evidence and planned activities of the members of the research team directed toward synthesis of T–ceph–A, we hold the production of T–ceph–A as and when asserted by Berges to be established by more than a preponderance of the evidence.

618 F.2d at 775, 205 USPQ at 695.

The presentation in the present case of two corroborating affidavits and copies of certain pages of the inventor's notebooks containing plots and graphs does not create the cohesive "web of allegedly corroborative evidence" found in *Berges. Id.*

Indeed, standing alone, Hahn's graphical data did not *prima facie* show an actual reduction to practice because that data, particularly the infrared spectroscopy and nuclear magnetic resonance results, did not show that the results of those analyses actually represented the claimed compound. Unlike the situation in *Berges*, where the Board had conceded that the claimed compound was as it was represented, 618 F.2d at 775, 205 USPQ at 695, here facts independent of the inventor's own assertions were needed to interpret the

graphs. The two corroborative affidavits did not supply the missing information.

Furthermore, the dates Hahn had submitted did not unambiguously show that, even if Stephen Hahn's work constituted a reduction to practice, that work antedated the critical date. In contrast to the evidence presented by *Berges*, Hahn at best has shown only inventive activity prior to the critical date, but not a reduction to practice.

In any event, *Berges* arose under the old interference rules, which did not have the requirement of the new rules that Hahn was required to present evidence that states "with particularity" why they were "*prima facie* entitled to the judgment." *Cf.* 37 C.F.R. § 1.608(b)(1988) *with* 37 C.F.R. § 1.204(c)(1984). *See also* 37 C.F.R. § 1.671(f)(1988). Hahn's failure to do so meant that they had not established a *prima facie* case of priority based on reduction to practice.

In *Berges*, the court recognized that "[i]n the final analysis, each corroboration case must be decided on its own facts with a view to deciding whether the evidence as a whole is persuasive." 618 F.2d at 776, 205 USPQ at 695. Considering all the facts of the present case, *Berges* does not sustain Hahn's claim that they made a *prima facie* showing of reduction to practice.

## III

▮ The determination whether a party seeking to initiate an interference has shown "good cause" for his failure to present the additional evidence at the time of his initial submission is a matter within the discretion of the Board. *Cf. Womack v. Merit Sys. Protection Bd.*, 798 F.2d 453, 456 (Fed.Cir.1986) (Board has "broad discretion to decide whether" the appellant has shown "good cause" "to waive the time for appeal."). The Board did not abuse its discretion in holding that Hahn had not shown good cause and it therefore properly declined to consider the additional evidence Hahn submitted in response to the order to show cause.

The new rules for patent interference proceedings imposed stricter standards governing the circumstances under which the Patent and Trademark Office would consider additional evidence submitted to support a proposed interference. The old rules stated that "additional affidavits, declarations or exhibits will not be considered unless accompanied by a showing in excuse of their omission from the original showing." 37 C.F.R. § 1.228 (1984). Our predecessor court recognized that this language "itself sets no standard for showings in excuse." *Nakayama v. Banner*, 588 F.2d 1336, 1342–43, 200 USPQ 266, 270 (CCPA 1978). The position of the Board was that "[a]bhoring default judgments in general, we will accept the de minimis showing ... as to why the newly presented evidence should be considered." *Amoss v. McKinley*, 195 USPQ 452, 453 (Bd. Pat. Int.1977).

The "good cause" standard in the new rules was intended to tighten the prior practice. As the notice accompanying the publication of the new rules stated, a major change in practice that was adopted by the new 37 C.F.R. § 1.617 was that "[a] stricter standard would be imposed for presenting additional evidence after entry of an order to show cause." 49 Fed.Reg. at 48,422, 1050 Off. Gaz. Pat. Office at 391. *See also* 49 Fed.Reg. at 48,438, 1050 Off. Gaz. Pat. Office at 407 ("The PTO intends to be rather strict in permitting the filing of new evidence."); PTO, *Patent Interference Proceedings, Notice of Proposed Rulemaking*, 49 Fed.Reg. 3768, 3775 (Jan. 30, 1984), *reprinted in* 1039 Off. Gaz. Pat. Office 11, 34 (Feb. 14, 1984).

The notice pointed out:

The "good cause" showing required by § 1.617(b) imposes a stricter standard than was required under the prior rules [37 C.F.R. § 1.228].... Under the "good cause" standard, ignorance by a party or counsel of the provisions of the rules or the substantive requirements of the law would not constitute good cause.

49 Fed.Reg. at 48,423, 1050 Off. Gaz. Pat. Office at 392.

The Board justifiably concluded that neither of the two grounds upon which Hahn sought to establish good cause was suffi-

cient. Both of them fell afoul of the Patent and Trademark Office's warning that "ignorance by a party or counsel of the provisions of the rules or the substantive requirements of the law would not constitute good cause." *Id.*

Hahn's first claim of good cause was that their counsel "did not fully appreciate the kind of corroboration required to demonstrate a *prima facie* case for a complete reduction to practice before the filing date of the Party Wong. Most notably, counsel did not fully appreciate the requirement for corroboration independent of information from the inventor." As the Board pointed out, "[this] excuse offered by Hahn falls squarely within this proscription." *Hahn v. Wong*, slip op. at 9.

We have noted that the requirement of corroboration independent of the inventor's own statements was well established, even before the new rules. *See, e.g., Lacotte v. Thomas*, 758 F.2d at 613, 225 USPQ at 634; *Reese*, 661 F.2d at 1225, 211 USPQ at 940; *Mikus v. Wachtel [II]*, 542 F.2d at 1159, 191 USPQ at 573. *Berges* itself recognized the requirement. 618 F.2d 774, 205 USPQ at 694. Hahn's counsel's alleged failure to appreciate the need for such corroborating evidence did not constitute good cause for the failure to submit that evidence with their initial filing.

Hahn also asserted that their counsel "did not fully appreciate the significance of the reduced photocopies of plots generated from the polymer analyses shown in Exhibit A, particularly the IR spectrum, as they bear on the issue of the kind of corroboration required in this proceeding to establish a *prima facie* case." This claim, too, fails under the "strict standard" of the new rules that ignorance of the "rules or the substantive requirements of the law" does not constitute good cause. Indeed, the new rules specifically require that "[a]ny printed publication or other document which is not self-authenticating shall be authenticated and discussed with particularity in an affidavit." 37 C.F.R. § 1.608(b). *See also* 37 C.F.R. § 1.671(f) ("The significance of documentary and other exhibits ... shall be discussed with particularity by a witness during oral deposition or in an affidavit.").

Finally, Hahn asserts that the primary examiner's finding that the Hahn invention "was in fact reduced to practice before the filing dates of the '004 and '375 patents" obviated the need for them to show good cause. That statement by the primary examiner, however, must be read in the light of the issue he decided. As we have noted, the sole role of the primary examiner was to determine whether Hahn alleged a basis for priority over Wong, not to determine whether Hahn had made a *prima facie* showing of such priority. 37 C.F.R. § 1.608(b). *Cf.* M.P.E.P. § 2308.02, last paragraph. Only the examiner-in-chief could make the latter determination and decide whether the interference should go forward. *See* 37 C.F.R. § 1.610(a). Here the examiner-in-chief ruled that Hahn had not made such a *prima facie* showing, and the Board upheld that ruling and granted summary judgment for Wong.

The commentary on the "good cause" requirement in the notice for the new rules states that the "stricter standard" embodied in that requirement "is necessary to encourage applicants copying claims from a patent to better prepare their initial showings under proposed § 1.608(b). Under current practice, the Board of Patent Interferences has found that substantial time is lost in issuing orders to show cause based on an inadequate initial showing only to have an adequate showing made with the response to the order to show cause." 49 Fed.Reg. at 48,423, 1050 Off. Gaz. Pat. Office at 392. The present case involves precisely that situation. The Board did not abuse its discretion in refusing to permit Hahn to supplement its inadequate initial showing with the material that it could and should have submitted with that initial submission.

## CONCLUSION

The decision of the United States Patent and Trademark Office's Board of Patent Appeals and Interferences is

AFFIRMED.