**James S. HUSTON and Herman Oppermann, Appellants,**

v.

**Robert C. LADNER, Robert E. Bird and Karl Hardman, Appellees.**

**No. 91–1515.**

United States Court of Appeals, Federal Circuit.

Sept. 1, 1992.

James F. Haley, Jr., Fish & Neave, New York City, argued, for appellants. With him on the brief, was Denise L. Loring.

Jorge A. Goldstein, Sterne, Kessler, Goldstein & Fox, Washington, D.C., argued, for appellees. With him on the brief, was Steven Kreiss.

Before NEWMAN, PLAGER, and LOURIE, Circuit Judges.

LOURIE, Circuit Judge.

Huston appeals from the Board of Patent Appeals and Interferences decision in Patent Interference 102,562 granting summary judgment in favor of Ladner. Because we find that Huston failed to show that the Board abused its discretion in holding that the appellant did not show "good cause" under 37 C.F.R. § 1.617(b) to justify submission of additional evidence, we affirm.

## BACKGROUND

The present dispute involves an interference between Ladner's U.S. Patent 4,946,778 (the '778 patent), assigned to Genex Corporation, and Huston's U.S. Patent Application 07/052,800 (the '800 application), assigned to Creative Biomolecules, Inc. (Creative). The subject matter of the interference concerns a method of producing a single chain polypeptide that binds antigen and is defined by a single count.

Huston provoked the interference. Because his effective filing date was more than three months subsequent to that of Ladner, Huston was required to submit evidence under 37 C.F.R. § 1.608(b).[1] This material was filed by Creative's then-patent counsel and it attempted to demonstrate a *prima facie* case for priority over Ladner. The Examiner concluded that it did not do so. The Examiner declared the interference and simultaneously issued to Huston an Order to Show Cause under 37 C.F.R. § 1.617(a) why summary judgment should not be entered against him.[2] Huston filed his response to the Order pursuant to 37 C.F.R. § 1.617(b),[3] accompanied by additional evidence of priority in the form of declarations by the inventors and corroborating witnesses. The response included the declarations of the president of Creative, Charles Cohen, and substituted lead counsel for Huston, James Haley. It attempted to show "good cause" why the additional evidence was not submitted with the initial priority showing by asserting that Creative's attorney misrepresented his competence and ability in interference matters and was grossly negligent in filing the original submission.

A hearing was conducted before the Board, which affirmed the Examiner's decision that the original showing was inadequate. The Board stated that it could not consider the additional evidence submitted in response to the Order because Huston

1. Section 1.608(b) provides in pertinent part:
   (b) When the earlier of the filing date or the effective filing date of an application is more than three months after the earlier of the filing date or the effective filing date under 35 U.S.C. § 120 of a patent, the applicant, before an interference will be declared, shall file (1) evidence which may consist of patents or printed publications, other documents, and one or more affidavits which demonstrate that applicant is *prima facie* entitled to a judgment relative to the patentee and (2) an explanation stating with particularity the basis upon which the applicant is *prima facie* entitled to the judgment. Where the basis upon which an applicant is entitled to judgment relative to a patentee is priority of invention, the evidence shall include affidavits by the applicant, if possible, and one or more corroborating witnesses, supported by documentary evidence, if available, each setting out a factual description of acts and circumstances performed or observed by the affiant, which collectively would *prima facie* entitle the applicant to judgment on priority with respect to the earlier of the filing date or effective filing date of the patent.

37 C.F.R. § 1.608(b) (1991).

2. Section 1.617(a) provides in pertinent part:
   If in the opinion of the examiner-in-chief the evidence fails to show that the applicant is *prima facie* entitled to a judgment relative to the patentee, the examiner-in-chief shall, concurrently with the notice declaring the interference, enter an order stating the reasons for the opinion and directing the applicant, within a time set in the order, to show cause why summary judgment should not be entered against the applicant.
37 C.F.R. § 1.617(a) (1991).

3. Section 1.617(b) provides in pertinent part:
   (b) The applicant may file a response to the order and state any reasons why summary judgment should not be entered.... Additional evidence shall not be presented by the applicant or considered by the Board unless the applicant *shows good cause* why any additional evidence was not initially presented with the evidence filed under § 1.608(b).
37 C.F.R. § 1.617(b) (1991) (emphasis added).

had failed to show good cause why the evidence was not presented initially. The Board specifically rejected Huston's argument that there was good cause for not presenting the evidence earlier. The Board stated that the response did not include a showing that the additional evidence was unavailable and that it could not have been submitted with the initial showing.

## DISCUSSION

■■■■ The issue presented in this appeal is whether the Board abused its discretion in holding that Huston did not show the required "good cause" for failing to present the additional evidence with the initial priority showing submitted under 37 C.F.R. § 1.608(b). "The determination whether a party seeking to initiate an interference has shown 'good cause' for his failure to present the additional evidence at the time of his initial submission is a matter within the discretion of the Board." *Hahn v. Wong*, 892 F.2d 1028, 1034, 13 USPQ2d 1313, 1318 (Fed.Cir.1989). An abuse of discretion may be found when the Board's decision is clearly unreasonable, based on an erroneous conclusion of law or a clearly erroneous finding, or the record is devoid of any evidence upon which the Board rationally could have based its decision. *See A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1039, 22 USPQ2d 1321, 1333 (Fed.Cir.1992) (in banc).

Huston contends that he was entitled to supplement the original showing because the original attorney misrepresented to Creative his competence and ability to present Huston's *prima facie* showing under 37 C.F.R. § 1.608(b) and because he acted in a reckless and grossly negligent manner in filing the original evidence. The Board carefully considered these arguments and found that Huston had failed to satisfy the good cause requirement.

The Board specifically found that Huston's claim of misrepresentation by the attorney as to his ability to make a *prima facie* showing of priority was unsupported by the evidence. *Huston v. Ladner*, Interference No. 102,562, Slip Op. 13–14 (Bd. Pat.App.Int.1991). The Board went on to find that the attorney "did not appreciate the rule with regard to making the original showing complete and the substantive requirements of the law." *Id.* The Board held that this dispute was controlled by the rule set forth in *Hahn*, where we stated, "ignorance by a party or counsel of the provisions of the rules or the substantive requirements of the law does not constitute good cause" why the additional evidence was not presented initially. *Hahn*, 892 F.2d at 1034, 13 USPQ2d at 1319.

The Board also found that Huston's response to the Order did not include any showing that the additional evidence was unavailable and could not have been submitted with the initial showing, *Huston v. Ladner*, Interference No. 102,562, Slip Op. 11 (Bd.Pat.App.Int.1991). The Board properly recognized that if the evidence was not available when the original showing was filed, this would have been a valid excuse for not filing the evidence. However, because Huston did not show this excuse or any other valid excuse, the Board held that the additional evidence must be excluded. *Id.* at 14.

The Board recognized that the new interference rules embodied a policy of the Patent and Trademark Office (PTO) to ensure prompt resolution of patent interferences by encouraging applicants to prepare an original showing which is as complete as possible. The rules were intended to reduce the time and expense for the parties and the Board by imposing a stricter standard for filing additional evidence after entry of an order to show cause is made. 49 Fed.Reg. 48416, 48423 (December 12, 1984), Off.Gaz.Pat.Office 385, 392 (Jan. 29, 1985). In rejecting Huston's argument, the Board indicated that it relied on this policy and was furthering it. *Huston v. Ladner*, Interference No. 102,562, Slip Op. 13 (Bd. Pat.App.Int.1991). We see no error in the Board's or the examiner's implementation of the rules.

Huston argues that Creative should not suffer the consequences of his attorney's acts because Huston did not knowingly and freely acquiesce in his attorney's conduct.

Huston argues that even though Cohen's affidavit makes it clear that he took care in selecting his attorney to handle the interference, Creative should not be held responsible for his attorney's acts. This argument runs counter to established Supreme Court precedent holding that:

> There is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client. Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.'

*Link v. Wabash R.R. Co.*, 370 U.S. 626, 633–34, 82 S.Ct. 1386, 1390, 8 L.Ed.2d 734 (1962) (citation omitted). The attorney's conduct in this case was properly chargeable to Huston.

Huston argues that the remedy for his attorney's negligent conduct should be that he should be able to resubmit the evidence to make a *prima facie* showing of priority over the Ladner patent. This remedy is unavailable to Huston because he failed to meet the good cause requirement of 37 C.F.R. § 1.617(b).

In addition, Huston cites *Jackson v. Washington Monthly*, 569 F.2d 119, 123 (D.C.Cir.1977), *In re Lonardo*, 17 USPQ2d 1455, 1458 (Commr.Pats.1990) and *United States v. Cirami*, 563 F.2d 26, 34 (2nd Cir.1977) as permitting Huston to escape the consequences of his attorney's acts. These cases do not bind us. Even if we were inclined to follow them, the record evidence here does not bring this case within their holdings.

The question is not whether we, had we been on the Board, would have voted to grant Huston's petition. As the dissent so ably demonstrates, the record before us might well have supported such a decision.

Our question is much narrower: can we say that the decision to the contrary was an abuse of the Board's discretion? We conclude that we cannot.

If we were to hold that an attorney's negligence constitutes good cause for failing to meet a PTO requirement, the PTO's rules could become meaningless. Parties could regularly allege attorney negligence in order to avoid an unmet requirement. The dissent refers to "repeated misrepresentations" by counsel, noting assurances that a rejection would be "no problem" and that it is "routine." Whether these are examples of bad judgment, inexperience, or lack of competence, we cannot find them to be grounds for avoidance of the rules. We therefore hold that the Board did not abuse its discretion in finding that Huston's allegations of attorney misrepresentation and gross negligence failed to establish "good cause" under 37 C.F.R. § 1.617(b).

██ Following oral argument, Ladner moved for sanctions against Huston on the basis of what it asserts are later-discovered facts concerning misrepresentations by Huston before this court. The motion is denied.

We do not encourage appealing a weak case by asserting that one's prior attorney was negligent, when one continues to employ that attorney in related proceedings. However, we decline to sanction a losing party that is trying to restore a case in which it perhaps failed to make its best showing in the patent office. Under the circumstances, we will deny this motion because Huston's argument had a shred of potential in trying to extend the definition of "good cause."

## CONCLUSION

For the foregoing reasons, the decision of the Board is

AFFIRMED.

PAULINE NEWMAN, Circuit Judge, dissenting.

It is never easy to deal with the situation where inappropriate attorney action has adverse consequences for the client. This

case, however, falls into the extreme category where courts have, in the interest of justice, granted relief to the client. The attorney mishandled the case and misled the client; the Board rejected the client's prompt remedy as without "good cause", and the client received an adverse judgment on the merits, never having had a hearing on the merits.

These attorney errors occurred at the threshold of the case, before there had been any decision by the Board, indeed before the inception of the contest for priority. These errors occurred despite exceptional vigilance by the client. The attorney was a registered patent attorney of many years' experience. The client took immediate remedial action, attempting to cure the attorney's errors before a decision was rendered based on the errors, indeed during a "show cause" proceeding. The client made a clear showing of good cause. The Board's refusal to accept the showing was an abuse of administrative discretion, for the decision not only violates one's sense of justice but also was based on clearly erroneous findings of fact. The Board's decision is an improperly punitive action, wrongly visited on the client.

That a client is bound by the deeds of the lawyer remains the rule; but so does the opportunity for equitable relief when circumstances warrant. In considering the equities of this case, as we must, it is apparent that the penalty far exceeds the crime. The jurisprudence supports the exercise of discretion to avoid forfeiture, when intentional and repeated misrepresentations to the client, accompanied by errors of omission and commission, led to loss not only of Huston's opportunity to enter the priority contest, but an adverse decision without a hearing.

The consequence, final judgment that Huston was not the first inventor, is a forfeiture of unknown dimension. The interests on both sides of this interference are stated to be "small entity" biotechnology companies. The strong policy that favors resolution of legal disputes on their merits is enhanced by the obligation of the Patent and Trademark Office to issue facially valid patents. Both sides are prejudiced by this action. Thus I respectfully must dissent from the court's affirmance of the Board's action.

## The Board's Decision

The Board found that the attorney's failure to present a *prima facie* case of priority was based on his ignorance of the law. The Board also found that Huston's claim of attorney misrepresentation was unsupported by the evidence. Based on these findings the Board held that Huston failed to show "good cause" under 37 C.F.R. § 1.617(b). The Board stated that Huston failed to show that the additional evidence was unavailable and could not have been submitted with the initial showing. Citing *Hahn v. Wong*, 892 F.2d 1028, 1034–35, 13 USPQ2d 1313, 1319 (Fed.Cir.1989), the Board held that "ignorance by a party or counsel of the provisions of the rules or substantive requirements of the law does not constitute good cause." Without considering the additional evidence of diligence and corroboration that Huston had filed along with his showing of good cause, the Board granted summary judgment in favor of Ladner based on Huston's failure to show diligence and corroboration.

Determination of whether good cause has been shown for failure to comply with Rule 608(b) in a timely manner is consigned to the discretion of the Board. *Hahn v. Wong*, 892 F.2d at 1034, 13 USPQ2d at 1318. An abuse of discretion obtains when the decision is clearly unreasonable, arbitrary of fanciful, or is based on an erroneous conclusion of law or a clearly erroneous finding of fact, or the record is devoid of evidence on which the Board could reasonably have based its decision. *Western Electric Co. v. Piezo Technology, Inc.*, 860 F.2d 428, 430–31, 8 USPQ2d 1853, 1855 (Fed.Cir.1988). We review the Board's decision on this standard.

### 1. Ignorance of the Law

All involved agree that the attorney did not comply with Rule 608(b) (37 C.F.R.

§ 1.608(b)).[1] The patent examiners, the Board, the opponent, the appellant, all agree that it was necessary to provide evidence of diligence and corroboration. I agree that ignorance of the law is not of itself "good cause". *Hahn v. Wong*, 892 F.2d at 1034–35, 13 USPQ2d at 1319. However, failure to comply can not in this case be attributed to ignorance of the law, for the examiner twice told the attorney what the law was.

A brief chronology: On August 20, 1990 Huston's attorney, on the client's instruction to obtain the declaration of an interference between the Huston application and a patent issued to Ladner, filed certain declarations under Rule 608(b). These were apparently the same as three Rule 131 declarations that he had filed earlier in order to antedate another Ladner patent. Meanwhile, the examiner issued an office action on the Huston application, stating that these Rule 131 declarations could not satisfy Rule 608(b), and directing counsel to the *Manual of Patent Examining Procedure* § 2308 for guidance on the required showing under Rule 608(b).

On October 4, 1990 the examiner issued an official letter rejecting the three declarations for failure to show adequate corroboration and diligence. The examiner again referred counsel to Rule 608(b) and the *Manual of Patent Examining Procedure*. This gave the attorney a second opportunity to comply with these requirements. However, the attorney submitted revised declarations that were substantially similar to those previously filed.

The examiner-in-chief found the revised declarations inadequate under Rule 608(b) for failure to show adequate corroboration and diligence. She declared the interference and concurrently issued the Order to Show Cause why judgment of priority in favor of Ladner should not be entered. Despite continuing reassurances from the attorney, as I shall discuss *post*, the client immediately sought the advice of, and retained, other counsel.

The attorney can not be deemed ignorant of the law, for he was twice notified by the examiner that his submissions did not satisfy the substantive requirements of Rule 608(b). He was twice directed to the *Manual of Patent Examining Procedure* for further guidance. Whether the attorney's actions were negligent or grossly negligent or even excusable is immaterial to the question of whether the attorney was ignorant of the law or its substantive requirements.[2] The Board's finding that the attorney was ignorant of the law is clearly erroneous, for it is contrary to the evidence.

### 2. Attorney Misrepresentation

Mr. Charles Cohen, the president of Creative Biomolecules, Inc., the assignee of the Huston patent application, described (by affidavit) the events from the viewpoint of the client.

These events started in August 1990, when Mr. Cohen asked counsel to initiate a patent interference between the Ladner patent and the Huston application. Counsel filed certain documents. On inquiry by Mr. Cohen, he was assured by counsel that there would be no problem and that an interference would be declared shortly. About one month later, concerned that the

---

1. 37 C.F.R. § 1.608(b) provides:
   When the ... filing date ... of an application is more that three months after the ... filing date ... of a patent, the applicant, before an interference will be declared, shall file (1) evidence ... which demonstrate that the applicant is *prima facie* entitled to judgment relative to the patentee and (2) an explanation stating with particularity the basis upon which the applicant is *prima facie* entitled to the judgment. Where the basis upon which an applicant is entitled to judgment relative to the patentee is priority of invention, the evidence shall include affidavits by the applicant, if possible, and one or more corroborating witnesses, supported by documentary evidence, if available, each setting out a factual description of acts and circumstances performed or observed by the affiant....

2. Harsh things are here said of the attorney, who has had no chance to defend, or explain, or offer mitigating circumstances. I do not pass judgment. My views are premised on the objective events as shown in the record before us, with all doubts concerning the factual premises of this summary judgment resolved in favor of the petitioner.

patent examiner had not declared the interference, Mr. Cohen again asked counsel if the submission was satisfactory. Counsel again assured Cohen that the papers were fine and he expected no difficulty in provoking the interference. Meanwhile, the examiner's office action of August 21, 1990 had notified counsel that the Rule 131 declarations could not be relied on to show a *prima facie* case of priority under Rule 608(b).

The October 4, 1990 official action from the examiner, which rejected the filed documents as inadequate, was reviewed by Mr. Cohen, who expressed concern to counsel that the examiner was saying "we didn't know the protocol." Counsel disagreed, saying the action was routine. Counsel then submitted the "revised" declarations, which were substantially similar to the declarations previously submitted. On seeing the February 4, 1991 Order to Show Cause, Mr. Cohen stated that it appeared the examiner was "doing more than asking for clarification and arguing about protocol." Counsel again assured Mr. Cohen that any problems were trivial and could be easily addressed. However, Mr. Cohen took other counsel.

Thus the attorney did not comply with two warnings and explicit instructions from the examiner as to the sufficiency of the Rule 608(b) submissions, while reassuring the client that the objections were routine and readily overcome. In this specialized practice of patent interference law, the client acted reasonably in relying, at first, on the assurances of his attorney. These assurances, in response to pointed inquiries about the status of the interference and the sufficiency of the purported compliance with Rule 608(b), misrepresented these critical issues.

Mr. Cohen's affidavit was filed in response to the Order to Show Cause why summary judgment should not be entered. Such evidence "is to be believed, and all justifiable inferences are to be drawn in his favor", *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986), for no less deference than is afforded under Fed.R.Civ.P. 56(c) is appropriate before an administrative agency, when the consequence is summary judgment on the merits. This evidence showed the party Huston's justifiable reliance on counsel's misrepresentations. There was no reasonable support for the Board's summary finding that there was no attorney misrepresentation. Thus the Board's finding of the absence of attorney misrepresentation is clearly erroneous.

### Precedent and Other Authority

The general rule is that a party to litigation can not avoid the consequences of the acts or omissions of its freely selected attorney. *Link v. Wabash R.R.*, 370 U.S. 626, 633–34, 82 S.Ct. 1386, 1390–91, 8 L.Ed.2d 734 (1962). But courts have recognized an exception when the attorney has intentionally misrepresented facts to the client and the client has justifiably relied on those misrepresentations to his detriment. For example, in *Jackson v. Washington Monthly Co.*, 569 F.2d 119, 123 (D.C.Cir. 1977), the attorney repeatedly misled the client by assuring him that the litigation was continuing smoothly when in fact it had already been aborted. *Id.* at 122. The court stated:

> When a client does not knowingly and freely acquiesce in his attorney's neglectful conduct, but instead is misled to believing that the attorney is industrious, dismissal is not only a harsh step but one for which the circumstances provide little support for an agency theory as a rationale.

*Id.* at 122, n. 18 (citations omitted). The court observed that the client had not misbehaved, that the opponents in the litigation had not been harmed, and that the "vindication of the judicial process" did not require punishing the client instead of the lawyer. *Id.* at 123.

In *In re Lonardo*, 17 USPQ2d 1455 (Comm'r.Pats.1990), the attorney had failed to file formal drawings within the specified period, causing the application to become abandoned. The Commissioner held that in order to revive an abandoned application, both applicant and attorney must have been diligent in seeking revival. The Com-

missioner found that the applicant Lonardo was diligent and that the attorney was not diligent, but that the attorney's conduct could not be charged to the applicant because the attorney intentionally deceived the applicant, despite repeated inquiries. The Commissioner granted the petition to revive the abandoned application, holding that the attorney's lack of diligence was excused by illness.

In *Primbs v. United States*, 4 Cl.Ct. 366, 368 (1984), *aff'd*, 765 F.2d 159 (Fed.Cir.), *cert. denied*, 471 U.S. 1068, 105 S.Ct. 2147, 85 L.Ed.2d 503 (1985), the Claims Court reinstated a suit that had been dismissed for failure to prosecute, holding that in view of the attorney's deceptions and negligence, the "interests of justice would best be served" by vacating the dismissal and permitting the case to be tried on the merits. The court stated:

> [Counsel] was not merely negligent in his handling of plaintiff's suit. He actively misled and lulled his client into believing this case was proceeding smoothly. That [counsel's] failures and deceptions would provide good reason for a malpractice action by plaintiff, however, does not relieve this court of its duty to determine whether plaintiff's suit should be reinstated.

*Id.* at 369–370.

In *L.P. Steuart, Inc. v. Matthews*, 329 F.2d 234, 235 (D.C.Cir.1964), *cert. denied*, 379 U.S. 824, 85 S.Ct. 50, 13 L.Ed.2d 35 (1964), the court observed that counsel had assured the client Matthews from time to time that the case was proceeding and would settle soon. Matthews personally checked on the case and learned that it had been dismissed for failure to prosecute. Counsel assured Matthews that he would take steps to reinstate the case, but he again took no action. The court stated that the personal problems of counsel caused him to grossly neglect a "diligent client's case and mislead the client." *Id.* The court affirmed the district court's reinstatement of the case.

In *Hahn v. Wong, supra,* this court declined to excuse the failure of the party Hahn to make a sufficient showing under Rule 608(b). Upon issuance of an Order to Show Cause, Hahn's counsel filed the requisite evidence of corroboration and offered the excuse that he did "not fully appreciate the kind of corroboration required to demonstrate a *prima facie* case [of priority]." 892 F.2d at 1031, 13 USPQ2d at 1316. This court agreed with the Board that this admitted ignorance of the law was not good cause. In the case at bar, the Board found ignorance of the law, and the absence of misrepresentation. As we have discussed, both of these findings are clearly in error. The express misrepresentations to the client, made when the client could have remedied the attorney's lapse, distinguishes these cases.

In *General Motors Corp. v. Cadillac Club Fashions Inc.*, 22 USPQ2d 1933 (Trademark Trial & App.Bd.1992) relief was granted in a situation not dissimilar to that at bar. General Motors had retained a law firm that had previously done satisfactory work. Although General Motors made reasonable inquiries as to the status of the proceedings, counsel concealed critical facts, thereby depriving the client of the opportunity to take timely corrective action. The Board held that counsel was grossly negligent in prosecuting the case and concealed critical facts, thereby entitling General Motors to relief from the final judgment dismissing the proceedings.

It is apparent that the practice in the courts, and of other PTO tribunals, is far less harsh than that here followed.

### Good Cause

A purpose of 37 C.F.R. § 1.617 is to require interference applicants to show, at the threshold, whether they can make a *prima facie* case of priority, thus reducing the delays that flowed from the prior practice. However, the "good cause" requirement of § 1.617(b) is not as narrow as the Board interprets it, and is not limited to situations where the missing evidence was not previously available. "Good cause" is an equitable term, and must be determined in light of all the circumstances, with due attention to the interest of justice.

The Cohen affidavit describes the concerned and diligent attention by the client throughout the entire period, including reasonable reliance on the attorney's assurances, followed by prompt change of counsel despite continuing reassurances. New counsel filed, within one month, the requisite documents showing corroboration and diligence as required by Rule 608(b). The client was active and without fault. He initiated conferences with counsel when he perceived the case was not proceeding smoothly, and acted expeditiously to remedy the errors.

Strong policies favor resolution on the merits of the question in litigation. *Jackson v. Beech*, 636 F.2d 831, 837 (D.C.Cir. 1980) (default judgments are not designed to discipline the bar at the "expense of the litigant's day in court"). *See also In re Rains*, 946 F.2d 731, 732–33 (10th Cir.1991) (default judgments are "harsh sanctions" depriving a litigant of his or her day in court). These policies are of particular force when the consequence is not only dismissal of the action, but also a forfeiture of property by default.

The Patent and Trademark Office is charged with the issuance of valid patents. I will not speculate on whether or how the Ladner patent may be beclouded by these events. However, the place to resolve the issue of priority of invention is the PTO. As I stated in *In re Keil*, 808 F.2d 830, 832, 1 USPQ2d 1427, 1429 (Fed.Cir.1987) (Newman, J., dissenting):

> The highly technical rules of priority contests, the scientific expertise needed to understand the ... subject inventions, the arcana of corroboration and diligence and reduction to practice, are the soul and substance of the administrative agency. The correct place to determine priority of invention in the first instance is the PTO.

The facts of this case meet the requirements of relief. It is inappropriate to do injustice to the client, when the issue is attorney discipline. Huston argues that the attorney's submissions under Rule 608 evidenced "grossly negligent" conduct, that gross negligence is not chargeable to the client, and that this alone constitutes a basis for finding "good cause" under 37 C.F.R. § 1.617(b). We need not decide this question, for in this case the combination of inadequate prosecution and misrepresentation, accompanied by forfeiture on the merits, constitute "good cause".

The extreme circumstances of this case do not open new doors to careless litigants. Every losing party in an interference would not hereafter be entitled to another chance. The affirmative and repeated misrepresentations by Huston's counsel, and the justifiable reliance by the client on those misrepresentations, coupled with diligence by the client, are similar to situations in which relief has been granted.

For all these reasons, I conclude that the Board exceeded its discretionary authority. By failing to find good cause due to clearly erroneous findings of fact, and thus refusing to consider the evidence of corroboration and diligence, the Board summarily decided the merits of the case on a deficient record. The exercise of discretion by the Board warranted relief in the circumstances that here prevailed.