25 C.C.P.A.

## ELLIS v. MADDOX.
### Patent Appeal No. 3849.

Court of Customs and Patent Appeals.
April 25, 1938.

Fay, Oberlin & Fay, of Cleveland, Ohio (Almon S. Nelson, of Washington, D. C., of counsel), for appellant.

Bates, Golrick & Teare, of Cleveland, Ohio (Albert R. Teare and Walter F. Liesegang, both of Cleveland, Ohio, of counsel), for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

BLAND, Associate Judge.

This is an appeal by William J. Ellis, the junior party, from a decision of the Board of Appeals of the United States Patent Office, affirming that of the Examiner of Interferences in awarding priority of invention in two counts of an interference to the senior party, William J. Maddox. The counts read as follows:

"1. In a method of making a tubular abrasive element, the steps which consist in wrapping spirally upon a hollow mandrel an abrasive coated strip with the edges of adjacent convolutions in contact with each other, and securing said strip to said mandrel by interposing a layer of adhesive.

"2. An abrasive element comprising a hollow cylindrical mandrel and a spirally wrapped abrasive coated sheet adhesively secured to said mandrel and completely covering the outer surface thereof, the convolutions of said sheet having adjacent edges in contact without overflowing."

The invention is concerned with an abrasive element comprising a hollow cylindrical mandrel and a spirally wrapped abrasive-coated sheet adhesively secured to the mandrel and completely covering the outer surface thereof. The novelty of the article covered by count 2 and the method of making the same, covered by count 1, chiefly resides in spirally wrapping the abrasive-coated sheet around the hollow mandrel with its adjacent edges in contact, without overlapping, so as to leave no uneven places. These mandrels are used for various abrading purposes by dentists and manufacturers of various articles, the finishing of which requires abrading or polishing. The abrading material which is adhesively secured to the hollow mandrel may consist of sandpaper, or of cloth which is coated with some abrading substance.

The interference is between a patent to Ellis, No. 1,929,274, issued on October 3, 1933, upon an application filed July 18, 1929, and an application of Maddox for a reissue of his patent No. 1,883,747, issued October 18, 1932, upon an application filed August 19, 1926. On December 4, 1933, about two months after the issuance of the Ellis patent, Maddox filed his reissue application in which he copied the two counts involved here from the Ellis patent.

It is conceded that Maddox in his original application disclosed the invention of the counts, and that he therein claimed the invention in controversy in claims which are as broad or broader than the counts at bar, and that, upon the rejection of these claims, he canceled them and obtained a patent which did not contain claims covering the subject matter of the counts. Claims corresponding to the counts at bar stood rejected in the Ellis application upon the Maddox patent, and were allowed to Ellis upon his filing an affidavit under rule 75.

From the above statement it may be observed that the original Maddox application and the Ellis application were copending.

At the proper time the party Ellis moved to dissolve the interference upon the ground that Maddox, being estopped by reason of the above-stated facts, could not make the counts. The motion was denied, and upon appeal the Board of Appeals stated that at final hearing the Examiner of Interferences gave no consideration to appellant's contentions with respect to estoppel. The Board further stated that: " * * * As they are obviously not material to the validity of the Ellis patent, the examiner properly refused to consider them at that time. As they are not ancillary to the question of priority, they will not be considered by us."

On this phase of the case, it is contended by Ellis that the invention, under the circumstances stated, is not patentable to Maddox, and that it is well settled that his right to make the counts properly involves a consideration of his being estopped to claim them in view of the above-recited conduct. It is not contended by Ellis that the doctrine akin to equitable estoppel, applied in Mason v. Hepburn, 13 App.D.C. 86, and in many subsequently decided cases, is applicable here. It is argued at great length that since claims 17, 18, and 30 of the original Maddox application were directed to the same subject matter as that involved in this interference, and since this subject matter in the original application was abandoned by the cancellation of the claims, it must be held, under well-settled law, that the applicant cannot afterwards claim the invention. It is argued in substance that if he cannot claim the invention and cannot be allowed the claims in a reissue application (having canceled the claims and there being no inadvertence), he cannot successfully contest for an award of priority of the invention of the counts in a Patent Office interference proceeding. In other words, Ellis contends that the right of the party to make the counts involves the question of his being estopped from being allowed the claims in a reissue application.

A number of authorities are cited and discussed by appellant. The facts involved in the cases are quite different from those at bar. Some of the authorities cited are in no sense in point, while others are direct holdings opposed to the contentions of the appellant. For instance, Herthel and Tifft v. Dubbs, 65 F.2d 138, 20 C.C.P.A., Patents, 1128, is cited to support the general proposition that the "question of estoppel created by laches is ancillary to priority and properly reviewable by" this court. That case is not authority for such a holding. On the contrary, this court in that case refused to regard a question in many respects similar to the one presented here as being ancillary to the question of priority. Other cases relied upon by the appellant do nothing more than establish the proposition that

in some instances the right to make counts may be barred by reason of laches, or by reason of the applicability of a doctrine akin to equitable estoppel. No interference case has been cited or found where cancellation and abandonment of the subject matter of the counts in a prior application was held to be a bar to the right of one of the parties to make the counts.

In a number of cases, including Herthel and Tifft v. Dubbs, supra, the courts have pointed out that in certain cases (some of them being relied upon there and relied upon by appellant here) laches and abandonment have been held to be valid grounds of rejection of claims upon their ex parte consideration. Of course, it is proper to consider such subject matter under those circumstances, but not in an interference proceeding where priority of invention and ancillary matters only are involved.

The law is well settled that in an interference proceeding, in determining the right to make the counts, we may not give consideration to matters which go only to the patentability of the counts to one of the parties. Brogden v. Slater, 40 F.2d 988, 17 C.C.P.A., Patents, 1240; Trumbull v. Kirschbraun, 67 F.2d 974, 21 C.C.P.A., Patents, 758.

It seems to us that the distinction between cases in interference proceedings where the courts have given consideration to the said estoppel doctrine and where they have refused to do so, rests primarily upon the answer to the question as to who is the resultant beneficiary of the estoppel. If there is any estoppel in the case at bar it must operate, we think, in favor of the public, and not in favor of the appellant. In cases like Mason v. Hepburn, supra, it was held that the estoppel operated in favor of the second inventor. The public was not concerned. In the instant case, if any one is concerned about appellee's cancellation and abandonment of the invention it is the public, and of this fact the appellant in this kind of proceeding cannot be heard to complain. Therefore, the tribunals correctly ruled that the grounds upon which appellant based his motion to dissolve raised a question not ancillary to priority and properly refused to give consideration to the same. Bechtold v. Lanser, 82 F.2d 415, 23 C.C.P.A., Patents, 1051; Derby v. Whitworth, 62 F.2d 368, 20 C.C.P.A., Patents, 791.

In this view of the case, it next becomes necessary for us to give consideration to the proof of record in order to determine who was the prior inventor of the subject matter of the counts. Appellant urges that since Maddox in his reissue application seeks to copy the claims of Ellis' issued patent, he is subject to the rule of being required to prove that he was the first inventor beyond a reasonable doubt, and he points out the respects in which he thinks the proof of Maddox is not sufficient to establish, beyond a reasonable doubt, that he made the invention prior to Ellis' alleged proved date of February, 1926.

As to the Ellis proof, Ellis contends, in substance, that since he was the junior party, Maddox having been properly allowed the filing date of his original application for his reduction to practice, and since the applications were copending, it was necessary for Ellis to prove that he was the first inventor by a preponderance of the evidence only, and that when his evidence established his dates as being prior to the filing date of the original Maddox application, the burden then shifted to Maddox to prove beyond a reasonable doubt that he was the first inventor. In view of our conclusion, it will not be necessary to consider the Ellis proof.

On the contention that Maddox is under the burden of proving his case beyond a reasonable doubt, Ellis relies upon the decision of this court in Wiley v. Mears and Hynes, 75 F.2d 510, 22 C.C.P.A., Patents, 986. A superficial examination of that case might lead to the belief that the facts in that case were on all fours with the facts at bar. In that case it was held that Wiley (whose position in that case is claimed by appellant to be the same as that of Maddox in the instant case) was required to prove his case beyond a reasonable doubt, and certain authorities are there cited in support of the holding. An examination of those cited cases discloses that none of them involved facts similar to the facts at bar.

In Wiley v. Mears and Hynes, supra, Wiley, when he copied the claims, was not seeking a reissue of his old patent, nor was he filing a renewal, divisional, substitute, or continuing application in which he would be entitled to the filing date of a prior application in determining which of the parties was senior in the interference proceeding. See Underwood's Interference Practice, § 66; Rivise, Interference Prac-

tice, § 77. The application in which he disclosed the invention of some of the counts was not the one which was in interference, nor was there such continuity between them as to entitle the early disclosure to be considered for any purpose other than that of proof in establishing priority. In Wiley's application, in which he copied the Mears and Hynes claims, he stated that it was for an improvement of the disclosure in his prior patents. His application, therefore, was for an independent invention, and since it was filed subsequently to the issuance of the Mears and Hynes patent, and since he was not entitled to the date of his disclosure in his patent in determining which party had the burden of proof, he was properly made the junior party and. as such, under the circumstances above recited, he was under the burden of proving that he was the first inventor beyond a reasonable doubt.

This is not the situation in the instant case. Maddox clearly disclosed and claimed in his original application the issues of the counts. When in an application for reissue, filed subsequent to the issuance of the Ellis patent, he copied the Ellis claims, there was such continuity between the two applications as to entitle him to the date of the disclosure in his original patent application for all purposes. Under the circumstances stated, Maddox was the senior party. This fact is not disputed. See Underwood's Interference Practice, §§ 14, 66. The burden of proof, under such circumstances, did not fall upon him. However, if he chose to show that he had completed his invention prior to Ellis' alleged proved date of February, 1926, which was earlier than the filing date of the Maddox original application, it was his duty to go forward with his proof. In doing so, he, as stated by the Board, was under "no unusual burden of proof."

In the instant case, Ellis' earliest claimed date is in February, 1926. If the evidence shows that Maddox completed the invention of the counts prior to this date, it· is immaterial what character of proof Ellis submitted to sustain his claim that he completed the invention by February, 1926, since it would follow that the junior party Ellis would not have met the burden imposed upon him.

With the issue thus outlined, we proceed to consider the Maddox proof, which is severely criticized by the appellant, and it must be conceded, as is suggested by the Board, that there are elements of weakness contained therein. The Board stated that the Ellis proof was of no higher character than that adduced on behalf of Maddox, and that the burden rested primarily on Ellis. The Board not only found that the Examiner correctly awarded priority to the party Maddox upon his proof that he made the invention prior to any date claimed by Ellis, but found that Ellis' testimony, although it was stated that it was unnecessary for it to be discussed, was not sufficient to meet his burden of proving priority of invention.

The appellee, William J. Maddox, testified in substance that he, for many years prior to the critical period involved here, had been engaged in the development, making, and operation of several machines in the use of which spindles or mandrels like those involved here were employed, and that in the development of the machines it was necessary that he also improve existing abrasive spindles or mandrels to use with the machines. His testimony shows that much of his work upon the mandrels was done prior to February, 1925. He fixes the date of the completion of one of these machines in February, 1925, by an invoice dated in the spring of 1925 for an electric motor which he states he bought to go on the first spindle sander; that not more than thirty days after buying the motor the machine was completed and operated, and that its operation was successful. Various other exhibits were offered to establish the date of finishing the machine. It is at once apparent that if Maddox' proof shows a completion of the invention here at bar, it must depend largely upon the sufficiency of his proof to show the completion of the machines during that year.

Maddox' son, Burton, whose testimony is relied upon, in part, as corroborating the testimony of his father, the appellee, testified to the effect that the worked with his father "in the Maddox Machine Company" during the years 1925 and 1926, where he started to work in 1922, and that part of his work consisted of manufacturing abrasive drums or mandrels; that they were first tried out on a lathe in the shop, and that "Exhibit H was the first spindle ever used to turn out the spiral taper wound tube"; that he used it in sanding wood; that this operation was performed in the first part of the year 1925 "possibly February or March"; that Exhibit J, another mandrel like that involved here, was made

right after the first step was taken; that Exhibit L was first seen by him about the first of March or the latter part of February, 1925; that it was first used on a lathe. Other exhibits which respond to the counts were testified to as being used in January or February, 1925, and certain blueprinting was introduced for the purpose of establishing these dates. Exhibits G and F are drawings of sanding machines. Burton Maddox testified that they were made about the same time—in the early part of 1925—the early part of January or February, 1925. Exhibit H, he testified, was the first machine that was completed, and that a motor was used in this exhibit, which motor was purchased April 10, 1925, as is shown by the invoice, Exhibit M. Concerning the machine represented by Exhibit H, he testified as follows: "Exhibit H was the first machine that was completed, using this motor on Exhibit M. With reference to the date on Exhibit M, I would say the first spindle machine was completed about the middle or the latter part of April, 1925, that is, the only purpose that the motor was purchased for. At the time the machine was completed the drums as shown on photographs Exhibit N were completed before that. I operated the machine like Exhibit N at Maddox Machine Co. upon its completion the last part of April, 1925. The operation consisted of trying and sanding different pieces of wood with very satisfactory results. I saw my father operate it various times by sanding different grades of wood with very successful results."

He identified other exhibits and corroborated the fact, as testified to by his father, that the machines using devices like that involved here were fully completed and operated in 1925.

The Examiner of Interferences found that the testimony of Charles J. Anderson corroborated that of the appellee Maddox. The Board made no mention of Anderson's testimony, but stated that the existence of documentary proof removed the uncertainty and afforded "at least circumstantial corroboration of the dates alleged."

Anderson's testimony, we think, when considered as a whole, helps to fix the dates and corroborates some parts of the testimony of the appellee Maddox. He testified that he was a machinist, and that in 1925 he made sanding and rubbing machines for Maddox. Concerning the machines represented by some of the exhibits,

he stated that they were used by appellee Maddox in November and December, 1925, or early in 1926. He stated that he was over there every week or two during the year 1925, and saw the machines operate. It is true that his dates do not exactly coincide with the dates testified to by Maddox and his son, but he stated that it was possible he had seen the machines in operation prior to 1925. At any rate, his testimony should be given some weight as fixing the time of the completion of the Maddox machines earlier than February, 1926. It is also true that his manner of fixing the dates is not as convincing as it might be, and that his testimony as a whole is somewhat unsatisfactory, but it cannot be fairly said that it does not, in some respects, corroborate the testimony of appellee.

After urging that the Maddox testimony must prove his dates beyond a reasonable doubt, appellant points to the fact that it is well settled that the testimony of the inventor himself is not sufficient to establish priority, and suggests that "The testimony of relatives, although not to be regarded as improper, nevertheless must be considered and accepted with caution. Williams v. Shireffs, 305 O.G. 631."

Appellant has correctly stated the rule with reference to the testimony of relatives, but the testimony of the son in the instant case cannot be ignored or rejected merely because he is a relative.

Appellant also points out that Maddox testified that the cylindrical drum marked "Exhibit L" was the first cylindrical or straight drum made; that at that time (1925) he went to the hardware store and bought two rolls of abrasive cloth, and that he bought no such cloth at any other time, and that some of the drums that he made contained abrasive cloth. Appellant points out that the time he bought the cloth was not February, 1925, but January, 1926, as was evidenced by Maddox Exhibit AA, which Maddox stated was dated January 20, 1926, and which is the date shown upon the exhibit. This, appellant contends, shows that the sleeves were made in January, 1926, and not in 1925. In answer to this argument, counsel for Maddox replies in substance that while Maddox' testimony does show that he bought this cloth in 1926, this fact is not at variance with his preceding testimony because the first exhibits made were made of sandpaper and not of abrasive cloth.

Upon the testimony produced by Maddox, the two tribunals of the Patent Office concurred in finding that Maddox completed his invention in the year 1925, which is earlier than any date claimed by Ellis. The usual rule as to concurring decisions applies here and such findings upon appeal will not be disturbed by this court unless they are manifestly wrong. Notwithstanding certain elements of weakness of the testimony relating to the Maddox dates which are stressed by appellant, we are of the opinion that the Board of Appeals properly found from it that Maddox had completed his invention prior to any date that could be allowed to Ellis, and that Ellis did not meet the burden of showing that he was the first inventor.

We conclude that the Board properly awarded priority of invention in the counts at bar to the senior party Maddox, and its decision here appealed from is affirmed.

Affirmed.